62 408
141 293
62 408
147 361
62 408
181 518
62 408
187 313
62 408
191 519
62 408
212 *435
212 *436

## Clark *et al. versus* Douglass.

1. A bond of a deputy collector, with a mortgage by his wife, was given to the principal to secure money embezzled by the deputy: in a scire facias on the mortgage the husband and wife agreed of record to liquidate the sum at the amount claimed by the collector, confessed judgment for that amount and the land was sold by the sheriff. On the petition of creditors, alleging that the judgment was confessed for more than was due, and that it was fraudulent, an issue was directed to try how much of the proceeds of sale could be applied to the mortgage. No issue was framed, but a declaration in assumpsit on the common counts was filed. *Held*, that such practice was irregular.

2. The issue should have been made on a count on a wager stating the precise question by agreement of the parties or settled by the court.

3. The Supreme Court cannot revise the order granting an issue, but can decide only on the rulings in regard to it.

4. A judgment cannot be collaterally attacked except on the ground that it was fraudulently obtained to hinder, delay and defraud creditors.

5. A judgment confessed by husband and wife in a scire facias on a mortgage duly executed by her, is not void.

6. The remedy by the defendant in an erroneous judgment is by motion to open and let him into a defence.

7. A judgment confessed by an insolvent or indebted man for more than is due is primâ facie fraudulent.

8. In distributing an insolvent's estate, creditors may make any objection against the claims of others which the debtor could, and against a judgment may set up whatever he could in scire facias on it.

9. There is no difference between a judgment confessed or by default and one on the verdict of a jury.

10. Creditors can attack a judgment on a verdict by evidence that it was taken by consent or default or that the defence set up was a sham.

11. When a defendant in a judgment who has a good ground for opening it refuses to make application or allow his name to be used, *it seems* that a court would allow creditors to come in, open the judgment and take defence in his name. Per Sharswood, J.

12. In an issue to try whether a judgment had been confessed for more than was due, the court charged, that if it " was confessed for more than was due with the corrupt intention of encumbering the property in order to hinder, delay or defraud other creditors, the verdict should be for the plaintiffs" (the creditors). *Held* to be correct.

October 19th 1869. Before Thompson, C. J., Read, Agnew, Sharswood and Williams, JJ.

Error to the Court of Common Pleas of *Erie county :* Of October and November Term 1869, No. 6.

This was a feigned issue ordered August 30th 1867, between Clark and Metcalf, Warren D. Kellogg and William J. Sterrett, plaintiffs, and John W. Douglass, defendant. The circumstances under which the issue was ordered are as follows : On the 30th of August 1865, Julius Degmier executed a bond with warrant of attorney to John W. Douglass in the sum of $15,000, the condition being "that whereas the said Julius Degmier is indebted to the said John W. Douglass for money received by the said Degmier, at various times, whilst acting as clerk and deputy collector of

[Clark v. Douglass.]

internal revenue, in the office of collector of internal revenue, for the 19th Collection and Congressional District of Pennsylvania, and appropriàted by said Degmier to his own use, which moneys have to be accounted for by the said Douglass, as collector for the said district. And whereas, the amount so taken, is as yet uncertain and undetermined; now, therefore, if the said Degmier shall and do well and truly pay, or cause to be paid, to the said Douglass, the amount of such defalcation or appropriation, when ascertained, without fraud or further delay, then this obligation to be void, or else to be and remain in full force and virtue. And, it is stipulated by the said Degmier, as a further condition of this bond, that the said Douglass, his heirs, executors, administrators or assigns, may liquidate the amount due on this bond, at the apparent defalcation in said office, without scire facias or notice to the said Degmier."

On the same day Julius Degmier and Charlotte Degmier his wife executed and delivered to Douglass a mortgage on the real estate of Mrs. Degmier to secure the payment of the bond. In February Term 1867 Douglass issued a scire facias on the mortgage, and on the 1st of June 1867 Degmier and his wife executed under their seals a paper entitled of the scire facias, by which they " agreed to liquidate the amount due on the mortgage at $16,578," and confessed judgment in favor of Douglass for that amount. Under a levari facias, to August Term 1867, Mrs. Degmier's property was sold for $11,675. On the 30th of August 1867 the plaintiffs in this issue presented a petition setting forth that, on the 30th of August 1865, Degmier was indebted to Douglass " $3316.72 and no more;" and further setting out the bond of Degmier, the mortgage of himself and wife, the judgment on the mortgage, and the sale under the levari for $11,675, " which is all claimed by Douglass to apply upon his said debt;" setting out further that they were lien-creditors of Degmier and wife by junior liens, and charging that for the amount beyond $3316.72, the bond and mortgage are fraudulent and void, and that therefore " Douglass has postponed his judgment until the judgments of the petitioners are paid;" they prayed for " an issue to try how much of the money made by the sale before mentioned and now in the sheriff's hands, if any, shall or can legally be applied to the payment of the said judgment of the said John W. Douglass."

The issue was accordingly ordered as before stated, and a declaration in assumpsit on the common counts filed. On the trial, before Johnson, P. J., the plaintiff proposed to prove that the mortgage was not executed by Mrs. Degmier according to law ; that the judgment was given to secure but little above $3000 ; that Degmier at the time of the liquidation was under arrest for a criminal offence, and he and Douglass colluded to liquidate the judgment at $12,000 more than was due, in consideration of

[Clark *v.* Douglass.]

Douglass releasing him from the prosecution. The offers were objected to by the defendant, the objections were sustained by the court to all the evidence not tending to show collusion between Degmier and Douglass; and bills of exception were sealed.

The plaintiffs then gave in evidence the arrest of Degmier in a prosecution by the United States on the complaint of Douglass, his committal to jail on the 28th of June 1867, and, same day, his release on bail.

Mrs. Degmier testified that Mr. Curtis, the counsel of Douglass, called on her about liquidating the judgment, before it was done, on the same day Douglass informed her in answer to her inquiry that Mr. Curtis was preparing a paper to get her husband released; she signed the paper liquidating the judgment; it was not read, she did not know its contents, her husband was not at home; she did not know the amount claimed by Douglass; Curtis had told her a day or two before that her husband would have to go to the state prison; she signed voluntarily without constraint from her husband.

Degmier testified that he owed Douglass $3316.72 on 30th of August 1865. There was evidence also of declarations by Douglass that the indebtedness of Degmier would not exceed $4000, but the precise sum would be ascertained by the settlement of the accounts at Washington. The defendant gave evidence by Mr. Curtis that the paper liquidating the judgment was read over and explained to Mr. and Mrs. Degmier, that he stated to them that Mr. Douglass claimed the whole amount of the mortgage, that nothing was said as to withdrawing the prosecution, with other facts tending to show that the paper had been executed voluntarily and understandingly. Defendant gave evidence also tending to show that the whole amount for which the judgment had been liquidated was due to him. One witness testified that on the 30th of January 1865 the deficit in the revenue accounts was $12,086.36, which continued to increase till August, when it was $13,392.71.

The plaintiffs' points were,—

"1. The jury must be satisfied from the evidence that the whole of the amount of the mortgage from which the judgment in this case was liquidated was due and owing to the defendant; the whole of the evidence of the defendant, and the bond accompanying, show that it was not known or ascertained at the time it was given how much was due the defendant Douglass; but that the amount was to be ascertained.

"2. The admission of Degmier that he owed Douglass between $3300 and $3400, would not enable the jury to infer that he owed him any more than he admitted.

"3. Either the proof or admission by Degmier that he had taken or stolen $3000 or $4000 would not be such fact or evidence

[Clark v. Douglass.]

as would enable the jury to draw the conclusion that he had taken a larger sum, would not require him to account for all the money that might be missing, without proof that the greater amount had been taken at the same time by him under the same circumstances as other satisfactory proof of the fact. Under this issue, every fact going to show that more money is claimed by Douglass than is due him, and that the judgment is for more than was due or owing to him at the time by Degmier, is competent evidence.

"4. The bond for which the mortgage was given to secure, points out the manner; the amount due is to be ascertained, and must be pursued in order to bind Mrs. Degmier, she being a married woman, and the judgment confessed by her is void.

"6. Under the evidence in this case, and from the character of the bond and mortgage, it devolves upon the defendant to show affirmatively that Mrs. Degmier knew the contents of the mortgage when she signed it.

"7. Mrs. Degmier being a married woman, a judgment confessed by her in a case like the present, is void, and nothing can be claimed by or under such judgment by the party procuring it or claiming under it.

"8. If the jury believe from the evidence that the judgment in favor of John W. Douglass against Julius and Charlotte Degmier was liquidated for a larger sum than was actually due, with the knowledge of Julius Degmier of that fact, the judgment is fraudulent as to the creditors of Degmier, and in that case the plaintiffs are entitled to recover.

"9. If the jury believe from the evidence that at the time of the liquidation of the judgment upon the scire facias on the mortgage, Degmier was under an arrest, charged with a felony upon the complaint of John W. Douglass, and if inducements were held out to Degmier that he should be discharged from arrest if they would sign the liquidation, and that liquidation was for a much larger amount than was actually due, such judgment is fraudulent as to the other creditors of Degmier."

The court answered the points as follows :—

"1. The first clause of the 1st point we answer in the negative. The balance of it is argument for the jury, and more appropriate to come from the counsel than the court.

"The 2d and 3d points (except the last clause of the 3d) are but reiterations of what the counsel has already said to the jury, and we answer them by saying, the jury may do as they please, and as their own judgment and conscience dictate. If they find the deficit of cash in the office $12,086.35, and that Degmier admitted he purloined $3316 of it, that he had an equal opportunity to take the whole, and that no circumstance of suspicion rests on any one else, they may infer, if they please, that he did take the balance missing,—but they are not bound to. The last clause

of the 3d point is correct, provided the jury find the fraudulent purpose of the parties, as explained in our general charge, to have existed, so as to admit the right of the plaintiffs to impeach the judgment in the collateral way.

"4. In answer to this we say, that liquidation and confession of judgment is the act of the defendants therein, and no one but themselves has a right to call it in question, except for collusion and fraud, and for all the purposes of this suit the judgment is not void as to Mrs. Degmier.

"6 and 7. Are answered by saying that the questions therein suggested are not germain to this case, and require no answer.

"8. We say, in answer to this point, that its premises are not sufficient to warrant the conclusion drawn. The simple fact that Degmier knew that the judgment was for more money than he states, even if that fact was susceptible of proof, would not constitute such covin or collusion as would make it available collaterally by third persons.

"9. This point is subject to the same remark, that the premises do not quite support the conclusion. Inducements held out by a stranger to Degmier of exemption from arrest, without the knowledge of the plaintiffs; or the judgment being for too much, without any knowledge of that fact, or fraudulent intention on the part of the plaintiffs, would not authorize an attack upon it in this way by outsiders so long as the defendants were content to let it stand."

The court further instructed the jury: * * * "The evidence shows that the attitude of those parties towards each other when the judgment was confessed, and ever since, has been hostile and antagonistic. Collusion to cheat third persons, friendly to both, can hardly be predicated of such parties under such circumstances. [But I will give a more liberal definition to the term collusion. It is this: If these parties, Douglass and Degmier, co-operated in the consummation of an act fraudulent in itself, and intended for a fraudulent purpose by each, although having different purposes in view—if the effect of that act is to defraud the creditors of Degmier, then it may be treated as collusive, and impeached by Degmier's creditors. To illustrate. If you believe Douglass knew Degmier did not owe him, or had embezzled the amount for which he demanded judgment, but for the purpose of forcing Degmier to pay him more money than he had taken or owed him, had extorted from him and his wife the confession and liquidation complained of, and if at the same time you believe Degmier and wife confessed the judgment for more than they knew Degmier owed Douglass, or had embezzled, with the corrupt intention of encumbering their property in order to hinder, or delay and defraud his other creditors, then I say you may enter upon the inquiry as to how much, according to the evidence, was really due

[Clark v. Douglass.]

to Douglass, or rather how much money belonging to the collector's office he had embezzled and misapplied.] The plaintiffs, not Degmier, have assailed the judgment. They have the laboring oar. The parties of record to the judgment are acquiescing in it. It is not enough that the consideration was inadequate. The parties only can take advantage of that fact, if it be so. The plaintiffs, as the creditors of Degmier, can only attack because collusive and fraudulent. They cannot take advantage of any mere irregularity or inadequacy of consideration. They must show fraud and collusion to perpetrate it." * *

"Douglass having an undisturbed judgment for $16,578, and its interest, may rest contented on the protection the law throws around it. And the assailing party must show affirmatively that it was in part or in whole without consideration, and that it was confessed, or is kept on foot falsely and fraudulently by the parties." * *

"If you find from the evidence that there was no more of a deficit in Degmier's proper account on settlement with the collector's office, in which he was a subordinate officer, than the $3316.72, which he admits having abstracted, then your verdict should be for the plaintiffs. If the evidence fails to satisfy you of this, and either satisfies you that his defalcation was even more; or that there existed no fraud or collusion in liquidating and leaving the judgment as it is, then your verdict should be for the defendant. [If you detect fraud enough about it to open the door and let you into an investigation of its merits, and you discover that Douglass's claim is good for part of the judgment and money over the $3316; or that he is honestly entitled to more than this much of the surplus fund in court, but not all, then you should find from the evidence how much more he ought to have to cover all Degmier's deficits, and name it in your verdict."]

The verdict was for the defendant. The plaintiffs removed the case to the Supreme Court, and there assigned for error:—the rejection of their offers of evidence; the answers to their points; and the parts of the charge included in brackets.

*G. W. De Camp*, for plaintiffs in error, cited Phelps's Appeal, 12 Wright 159.

*C. B. Curtis*, for defendant in error, cited Braddee v. Brownfield, 4 Watts 475; Thompson's Appeal, 7 P. F. Smith 175; Dougherty's Estate, 9 W. & S. 189; Lewis v. Rogers, 4 Harris 18; Hartman v. Ogborn, 4 P. F. Smith 120; Nace v. Hollenback, 1 S. & R. 340; Blythe v. Richards, 10 Id. 261.

The opinion of the court was delivered, January 3d 1870, by

SHARSWOOD, J.—All the assignments of error may be considered together, as they rest upon the same principle.

[Clark *v.* Douglass.]

Julius Degmier was a deputy collector of Federal internal revenue for the Nineteenth Collection District of this state, appointed by John W. Douglass, the principal collector. It was found that he had embezzled a considerable sum of money, for which the principal was responsible to the government. He and his wife executed a mortgage of her estate in due form in the sum of $15,000, to secure Douglass from this liability. The amount of the defalcation had not then been ascertained. A scire facias was subsequently issued on this mortgage, the amount due upon it liquidated by the agreement of the parties, and judgment confessed for the sum so ascertained. A levari facias was issued, and the mortgaged property sold by the sheriff. The plaintiffs then applied to the court by petition, alleging that all that was really due on the mortgage was $3316.72, with interest, and as to the balance of the judgment, that it was fraudulent and void; and that by reason of the attempt of Douglass fraudulently to enforce the collection of the whole amount, and thereby to hinder, delay and defraud the petitioners in the collection of their several debts, he, the said Douglass, had postponed his judgment until the petitioners were paid, and thereupon prayed an issue to try how much of the proceeds of the sheriff's sale, if any, could be legally applied to the payment of the judgment in question. The court granted the prayer of the petition. No formal issue, however, was framed. A declaration was filed in assumpsit for goods sold and delivered, work and labor done, and the common money counts, instead of the old and approved form of a count upon a wager, in which the precise question to be tried is stated, and if the parties cannot agree, settled by the court. The loose practice adopted in this case is much to be reprobated. The declaration filed might as well have been a blank sheet of paper. We are driven, then, by necessity, to discover, if we can, from the petition and order of the court upon it, what was the issue awarded. The jury was impannelled to try and determine that issue—what it was in fact, not what it ought to have been. On a writ of error to a judgment on a feigned issue—being on an interlocutory and not a final decree—we cannot revise the order granting the issue, but have only to decide upon the rulings and charges of the court below in reference to it. Taking the petition as our guide, we think the question intended to be submitted to the jury evidently was, whether the judgment on the mortgage was fraudulently confessed for more than the amount honestly due, for the purpose of hindering, delaying and defrauding the petitioners and other creditors. No other issue could properly have been awarded; for it is clear, and now fortunately well settled, that the petitioners had no right to attack the judgment collaterally upon any other ground. It was not a void judgment, for even as to the wife, the mortgage upon which the scire facias issued had been duly exe-

[Clark v. Douglass.]

cuted and acknowledged by her according to law. It was voidable, by strangers to it, only for fraud upon them, leaving it of course still a valid judgment as between the parties. The remedy of the defendants in the judgment was a motion to open it and be let into a defence upon the merits. This creditors could not do in a collateral proceeding, unless upon the ground of collusion: Dougherty's Estate, 9 W. & S. 189; Thompson's Appeal, 7 P. F. Smith 175. In Gates v. Johnston, 3 Barr 52, upon a writ of error to the judgment on the feigned issue, the question was not upon its effect, nor upon whether it was rightly framed, but only whether such as it was, it was rightly tried. Gibson, C. J., however, remarks in his opinion that the form of the issue was wrong, and that it ought to have been whether the judgment was collusive. So in Greene v. Tyler, 3 Wright 361, which was also a writ of error on a judgment in a feigned issue, the only matters properly before the court were the exceptions taken below on the trial. The effect of the verdict on the distribution of the fund was a subsequent and different question. The remarks of Mr. Justice Woodward are to be construed in this light, and the syllabus of the reporter truly expresses all that was really decided by the court. Nor is Benson's Appeal, 12 Wright 159, in conflict; for there the only question was, whether an issue ought to have been granted on an allegation by creditors that the judgment was confessed for a larger sum than was due. No point was made as to what ought to be the form of the issue—that was to be settled by the court below. A judgment confessed voluntarily by an insolvent or indebted man for more than is due is primâ facie fraudulent within the statute of 13 Eliz. c. 5. It is somewhat remarkable that in none of these cases was Dougherty's Estate cited or referred to by counsel or court, although Gibson, C. J., evidently had it in his mind in Gates v. Johnston. It is not necessary here to vindicate the law, as now finally settled in Thompson's Appeal, in which, as the question arose in an appeal from the final decree of distribution, the propriety of the award of the issue, and the legal effect of the finding of the jury, were directly involved. That law is the logical and inevitable consequence of the conclusive effect of the judgment of a court of competent jurisdiction. In distributing the estate of an insolvent, no doubt, creditors may take any objection against the claims of other creditors which the debtor himself could, and even as against a judgment, may show whatever the defendant could set up in debt, or scire facias upon it. There is no difference in legal effect between a judgment confessed, or for want of appearance or plea, and a judgment on the verdict of a jury. The court in which the judgment is rendered will indeed open one of the former kind, and let the defendant into a defence in a proper case, and upon equitable terms. Even as to a judgment upon a verdict, no doubt

[Clark *v.* Douglass.]

creditors could attack it collaterally by evidence that it was taken by consent or default, or that the defence set up was a sham. That of course could only be on the ground of collusion.

Now if Degmier and wife in this instance had pleaded, and gone to trial on the question of how much was due on the mortgage, and the verdict of the jury had been for the full amount, no one, I think, would pretend that the creditors would have any right, in law or equity, to have that question tried over again, unless on the ground that the first trial was collusive and fraudulent, as to them. The statute 13 Eliz. c. 5, has been said to have been declaratory, and to have done nothing which the common law would not have done without it, but we must at least receive it as a true and accurate declaration of what the law was. It declares void "feigned, covinous and fraudulent judgments when devised and contrived of malice, fraud, covin, collusion or guile, to the end, purpose and intent to delay, hinder and defraud creditors." No doubt, creditors might show that a debtor, who had a good defence and ground for opening a judgment confessed, or by default, pertinaciously and wilfully refused to make application or allow his name to be used for that purpose; for it would be very cogent evidence that if the original judgment was not collusive, it was kept on foot for the purpose of defrauding them. Indeed, I am not sure that a court, in the exercise of their equitable powers, would not, in such a case, allow the creditors to come in, open the judgment and take defence in the name of the defendant. Such appears to have been the opinion of Chief Justice Gibson. " Creditors," says he, " can attack a judgment collaterally only for collusion, not for matter of defence, original or subsequent. A debtor or his representative may have a judgment against him opened on ground laid, and when let into a defence on the merits reduce or discharge it; nor will I say that if he were to refuse to move for the benefit of his creditors they would not be permitted to move in his name. An insolvent man is not suffered to give away his property by means of a judgment, which, though proper at first, has become a security for less than the amount of it; but, while it stands as a debt of record, unabated in whole or part, neither the sheriff nor an antagonist creditor can resist the enforcement of it as a lien:" Lewis *v.* Rogers, 4 Harris 21. Nothing can be more just, consistent and symmetrical than the system of administering the law here indicated; for while it gives a remedy for every wrong, it saves the records of the court from the strange anomaly of a judgment found by the verdict of a jury to be a fraud upon the defendant, and yet standing as a perfectly valid security, which can be enforced against him. Besides this, I may mention that, according to the rules of evidence which existed before the passage of the late Act of Assembly making parties competent witnesses in their own favor, gross injustice

[Clark v. Douglass.]

might be done if issues were awarded to try whether judgments were valid as against the defendants themselves, in which the creditors, and not the defendants, are made the parties. To allow a judgment to. be attacked collaterally, on the ground that the defendant. himself had been defrauded, would be to permit him, under the wing of a favored creditor, to set it aside by his own testimony, when the mouth of the plaintiff was closed. For even upon that collateral issue it was held, in Ferree v. Thompson, 2 P. F. Smith 353, that the debtor was a competent witness for the contesting creditors, although the contesting judgments might not take the debtor's property.

Considering, then, the issue in the court below to have been in form such as it ought to have been on the petition and order, if it had been regularly framed, it is clear that no error was committed by the learned judge below, either in the rulings, answers or charge, of which the plaintiffs have any right to complain. The jury were instructed that if they believed that Degmier confessed the judgment for more than was due, with the corrupt intention of encumbering the property in order to hinder, delay or defraud his other creditors, then their verdict should be for the plaintiffs. As the verdict was for the defendant generally, it is unnecessary to consider whether the court was right in charging that if they found that the judgment had been fraudulently confessed for too much, they should, nevertheless, find for the defendant in the issue, and plaintiff in the judgment, the amount which was actually and honestly due to him.

Judgment affirmed.