## H. M. Page, Appellant, *v.* The Williamsport Suspender Company, Defendant, and Jean Saylor-Brown and Townsend & Longmire, Intervening Creditors.

f191 511
a196 122

191       511
21 SC  615

191       511
212      c436

191   511
f39SC8236

*Constitutional law—Title of act—Fraudulent debtors—Act of July* 9, 1897.

The Act of July 9, 1897, P. L. 237, entitled " A supplement to an act of the general assembly approved the seventeenth day of March Anno Domini one thousand eight hundred and sixty-nine, entitled ' An act relative to fraudulent debtors,' authorizing the court to inquire into the validity of judgments confessed and alleged to be fraudulent, and providing the practice therefor," does not violate section 3 of article 3 of the constitution, relating to the title of acts ; the fifth amendment of the constitution of the United States has no applicability to the case, and if sec. 2 of the act, is contrary to section 9 of the bill of rights of the constitution of Pennsylvania it could be cut off without impairing the rest of the act.

The object of the act of 1897 is to give a general creditor such standing to question the validity of judgments against his debtor as a lien creditor had previously.

*Attachment under act of 1869—Fraudulent debtors—Act of July 9, 1897 —Bond—Petitioning creditor—Practice, C. P.*

Where a petitioning creditor under the Fraudulent Debtors' Act of July 9, 1897, P. L. 237, fails to file his bond before the rule issues, but is subsequently permitted to do so nunc pro tunc, and no objection is made until after the case has been appealed to the Supreme Court, the objection will be considered as waived by the respondent in the rule.

Where a petitioning creditor under the act of July 9, 1897, has been permitted to intervene, but files no bond, neither the court of common pleas nor the Supreme Court has any jurisdiction as to him. The act is mandatory that a bond shall be filed before rule granted.

*Judgment—Confession of judgment—Partnership—Fraud.*

Where a person lends $500 to a firm, and gives his note for a second $500 payable to one of .the members of the firm, and in the honest belief that the money is for the firm, and the transaction is without any fraud on the part of the lender, a judgment confessed to him by the firm for $1,000 will be sustained, although it appears that the partner to whom the note was given used the note as part of his contribution to the firm capital.

There must be fraud, and the creditor must be a party to it, to avoid a judgment at the suit of other creditors.

Argued March 13, 1899.    Appeal, No. 164, Jan. T., 1898, by plaintiff, from order of C. P. Lycoming Co., March T., 1898, No. 476, making absolute rule to set aside judgment.    Before STERRETT, C. J., GREEN, MITCHELL, DEAN and FELL, JJ. Reversed.

Rule to set aside judgment.

From the record it appeared that Jean Saylor-Brown, a creditor presented her petition to the court under the Act of July 9, 1897, P. L. 237, praying for a rule on the plaintiff to show cause why his judgment should not be set aside for fraud. She did not at first file a bond as required by the act, but after the rule was issued, by permission of the court, she filed a bond, nunc pro tunc.

Townsend & Longmire, on petition, were permitted by the court to intervene and become parties to the proceedings to inquire into the validity of the judgment, but they never filed a bond.

The other facts appear by the opinion of McCLURE, P. J., of the 17th judicial district, specially presiding, which was as follows:

By the articles of copartnership Charles C. Case was to contribute $1,000 as his share of the capital stock of Ed. M. Hart & Co. To do this, he borrowed $500 from his father-in-law, the plaintiff, on May 5, 1897, and paid the balance June 22, by a negotiable note drawn by Mr. Page to Case's order, payable four months after date at the West Branch National Bank. This note was indorsed by Case and Ed. M. Hart & Co., discounted by the bank, and the proceeds went to the credit of the partnership. Case was credited with the cash and proceeds of the note as capital and charged with the discount. The note was renewed, October 22, 1897, with like paper signed by Page to Case's order, indorsed by him and the suspender company, Ed. M. Hart having retired in the mean time, and the partnership name changed to Williamsport Suspender Company.

It is unquestionable that the money and credit loaned by Page were obtained by Case for the purpose of meeting his obligation to his copartners, and it is just as clearly proved that he not only failed to disclose this fact to Page, but represented to him that he was borrowing the money for the firm and they would protect him. No security was given Page until the confession of this judgment by Case for the defendant company, which was done without the knowledge of his partner, Keightley.

Between the partners the money loaned by Page was Case's debt, but Page is on a different footing. Each partner is the general agent of the firm and has the power to bind his copartners by acts done within the scope of the business. He may borrow money for the partnership and give notes therefor in the name of the firm. " If the lender is informed or has notice that the money is borrowed for the individual use of the partner borrowing, and not for the firm, the partnership is not liable for any security that may be given therefor in the name of the firm. But if the lender has no knowledge or notice, at the time of making the loan, the firm will be liable therefor, although the money may have been borrowed for the separate use of one of the partners: " Mr. Justice WILLIAMS in Potter v. Price, 3 Pitts. 136.

As we have seen, Page was not informed that the money borrowed was for the individual use of Case, but was told just the contrary, and there was no notice of any fact that ought to have put him on inquiry. It follows that the $500 loaned by

Page was a debt of the partnership, and a judgment confessed for that amount would withstand the attack of its creditors.

That Keightley, when insolvency came, credited Page with $500 on the books of the firm is not of importance, as that entry would not make the partnership liable for the individual debt of Case. It was no more than a declaration that as between the members of the firm themselves they would consider it a debt of the partnership. To make it a claim which could be enforced by Page they would have to ratify the transaction or assume the debt by positive agreement with him: North Pa. Coal Co.'s App., 45 Pa. 181. Page's indorsement is another matter. His loan of money was a valid debt of the firm, only because there was no notice to him of the purpose for which the money was obtained and the consequent lack of authority in Case to bind the partnership, nor any circumstance that would have put a reasonably prudent man on inquiry. But when his son-in-law asked him to back the firm in securing a discount in bank he presented a paper on which the name of the partnership nowhere appeared. Instead, it was a note payable to his own order, and Page signed it, thus becoming the accommodation maker, not for the partnership but for Case. If, as we believe, Case said he wanted the money for the firm, this note bore on its face evidence that his statement, if not false, was at least not the whole truth. It was apparent, from the form of the instrument, that it was for some individual transaction of Case's. When presented to Page the partnership stamp was not on the note in any form. Notice of any fact that ought to put a man on inquiry is sufficient to protect a firm from the acts of a partner within the scope of the business: Potter v. Price, 3 Pitts. 136. Surely here was enough to lead any reasonably prudent man to inquire, why, if I am loaning my credit to the partnership, am I asked to sign a note payable to one of the partners? And inquiry would have developed that the money to be raised on the paper was to meet Case's obligations to his copartners, and for that he had no power to bind them. Mr. Page thought he was the indorser for the suspender company, but that cannot effect the law of the case. A man cannot be heard to say he did not know that which by due care he should have known. This loan of credit is not a partnership debt, and the confession of judgment by one partner, without the consent of the other is a fraud

on him and the firm creditors : McNaughton's Appeal, 101 Pa.
550.   And this fraud it would seem taints the whole judgment,
for a judgment fraudulent in part is void in the whole as against
other creditors : Gates v. Johnston, 3 Pa. 52.   The only excep-
tion to this rule and recognition of partly good and partly bad
judgments is, as Judge Arnold points out in Moore v. Dunn
& Fell, 147 Pa. 359 : " In cases of judgments held by married
women against their husbands in which the excessive part will
not be attributed to bad faith, but will be presumed to be a mis-
take, or included in good faith."   We would be inclined to add
this case to the exception rather than hold it within the rule,
but our judgment of what the law is must control our personal
views of what it should be.

And now, to wit: April 9, 1898, rule absolute, and the judg-
ment is set aside so far as the Williamsport Suspender Com-
pany is concerned, as also the execution and levy upon the
partnership assets.

*Errors assigned* were (1) in taking cognizance of the peti-
tions of Jean Saylor-Brown and Townsend & Longmire, which
are based on the provisions of the act of July 9, 1897, which act
is unconstitutional and void ; (2) in not dismissing the petitions
of Jean Saylor-Brown and Townsend & Longmire, because said
act is unconstitutional and void ; (3) in taking cognizance of
the petitions of Jean Saylor-Brown and Townsend & Longmire,
because, if said act is constitutional, said petitioners did not
comply with the provisions of said act ; (4) in not dismissing
the petitions of Jean Saylor-Brown and Townsend & Longmire,
because, if said act is constitutional, said petitioners gave no
bond, as required by said act ; (5) in permitting bond of peti-
tioner, Jean Saylor-Brown, to be filed March 5, 1898, as of Feb-
ruary 23, 1898 ; (6) in making the following order : And now,
March 8, 1898, this petition read in open court and upon motion
of Hicks & Spencer, attorneys for petitioners, it is ordered that
Townsend & Longmire be allowed to intervene in the proceed-
ings now pending to try the validity of the judgment of H.
Mudge Page v. The Williamsport Suspender Company, and that
they be made parties thereto ; (7) in overruling motion to re-
voke order staying execution of appellant ; (8) in making the
following order : And now, to wit : April 9, 1898, rule absolute,

and the judgment is set aside so far as the Williamsport Suspender Company is concerned, as also the execution and levy upon the partnership assets.

*C. LaRue Munson,* with him *Otto G. Kaupp,* for appellant.— The act is unconstitutional: Krug v. Behringer & Co., 6 Pa. Dist. Rep. 772; Galbreath's Lessee v. Eichelberger, 3 Yeates, 515; Hortsman v. Kaufman, 97 Pa. 147; Counselman v. Hitchcock, 142 U. S. 562.

The proceedings to inquire into the validity of the judgment confessed to H. M. Page cannot be sustained, because petitioners have not complied with the provisions of the act: Parks v. Watts, 112 Pa. 4; Williamson v. McCormick, 126 Pa. 274; Hoppes v. Houtz, 133 Pa. 34; Johnston & Co. v. Menagh, 4 Pa. Superior Ct. 154.

The appellees, as subsequent judgment creditors of the Williamsport Suspender Company, had no standing to inquire into the validity of the judgment confessed to H. M. Page: Grier v. Hood, 25 Pa. 430; Erwin's App., 39 Pa. 535; Moore v. Dunn & Fell, 147 Pa. 359; Grier v. Hood, 25 Pa. 432.

The firm of Ed. M. Hart & Co., subsequently Williamsport Suspender Company, having received the money and credit loaned by Page, and having used the same exclusively in their business, a moral and legal obligation is created to support the firm's subsequent promise to pay: Siegel v. Chidsey, 28 Pa. 279; Walker v. Bank, 98 Pa. 574; Coffin's App., 106 Pa. 280; Leonard v. Smith, 162 Pa. 284; Potter & Jones v. Price, 3 Pittsburg, 136; Larzelere & Son v. Tiel & Tooley, 3 Pa. Superior Ct. 109.

There is no fraud in securing a creditor by confessing a judgment in an amount sufficient to cover both his actual and contingent liabilities; and a judgment, invalid in part, does not taint the whole if the transaction is bona fide and the excess arises from an honest mistake of fact or law: Gicker v. Martin, 50 Pa. 138; Meckley's App., 102 Pa. 536; Howard Watch Co. v. Bedillion, 131 Pa. 385; Braden v. O'Neil, 183 Pa. 462; Baldwin v. Horron, 19 Pa. C. C. R. 634; Baird v. Ford, 152 Pa. 643; Thompson v. Sankey, 175 Pa. 597; Hawley v. Griffith, 187 Pa. 313.

*W. H. Spencer,* with him *T. M. B. Hicks,* for appellees. —The irregularity, or even illegality, of the proceedings, if there was any, was waived by the appellant: Warren v. Glynn, 37 N. H. 340; Johnson's App., 9 Pa. 416; Schenley v. Com., 36 Pa. 29; D. & H. Canal Co. v. Loftus, 71 Pa. 418; Wilson v. Kelly, 81 Pa. 412; Williamson v. McCormick, 126 Pa. 274; Fletcher v. Menken, 37 Ark. 206; Swanger v. Snyder, 50 Pa. 218; Poor v. Colburn, 57 Pa. 416; Conklin v. Harris, 5 Ala. 213; Morris v. Trustees, 15 Ill. 266; Lawver v. Langhans, 85 Ill. 138; Northrup v. Garrett, 17 Hun, 497; Ledoux v. Smith, 4 La. Ann. 482; Kenefick v. Caulfield, 88 Va. 122.

Error cannot be assigned in a matter which has become immaterial in consequence of the result of the case : Bank v. Gruber, 26 P. L. J. 97.

And the court will not reverse for an error that does no harm : Pentz v. Clark, 100 Pa. 446; Dunkle v. Harrington, 101 Pa. 465; Knapp v. Hortung, 103 Pa. 400; Lerch v. Snyder, 112 Pa. 161; Worrall v. Pyle, 132 Pa. 529.

The Page judgment was fraudulent as to $500 of its amount, and being fraudulent in part, it is wholly void as to the other creditors: Gates v. Johnston, 3 Pa. 52; Moore v. Dunn, 147 Pa. 362.

Opinion by Mr. Justice Mitchell, May 22, 1899 :

The first question raised by the assignments of error is the constitutionality of the Act of July 9, 1897, P. L. 237. The act is entitled a supplement to the act of March 17, 1869, relative to fraudulent debtors, "authorizing the courts to inquire into the validity of judgments confessed and alleged to be fraudulent, and providing the practice therefor."

It is objected that this act is void, first, because the title is not sufficiently explicit and the subject is not germane to that of the act to which this assumes to be a supplement, and secondly, because section 2, which provides that no witness shall be excused from answering as to any matter relating to the inquiry, is in violation of the fifth amendment of the constitution of the United States, and also of section 9 of the bill of rights of the constitution of Pennsylvania.

Neither of the objections is tenable. The subject of the act is entirely germane to the act of 1869. The title of the latter

refers to fraudulent debtors and that of the former to fraudulent judgments given by debtors. The subject of both acts is fraud by debtors against their creditors, and the object of both is to enable the creditors to investigate and defeat fraud if it be discovered. The methods and remedies are different but the object is the same. The title to the act of 1897 would have been good if it had ended with calling it a supplement to the act of 1869. But it did not stop at that. On the contrary, it went on and set forth the subject of the act itself with sufficient clearness to meet all requirements, even if it had not been called a supplement at all. The act of 1869 is not referred to or mentioned in any way in the body of the act, and omitting all the words referring to the act of 1869 the title would read "an act authorizing the courts to inquire into the validity of judgments confessed and alleged to be fraudulent, and providing the practice therefor." Such a title indicates the subject with entire clearness.

The second objection is equally untenable. The fifth amendment of the constitution of the United States has no applicability at all to the matter. As to the constitution of Pennsylvania, if any part of the act transgresses, which has not been shown, it is section 2, which is so distinct and separate that it might be cut off without in any way affecting the body of the act or its object. The act is constitutional and its purpose plain. Previously no creditor could interfere with another creditor's execution unless he had a lien himself by levy or otherwise. This act was intended to give a general creditor a standing such as he would have had if he had had a lien, and to facilitate his inquiry into the alleged fraud. It is for his benefit, and does not change the settled rule that a judgment, fraudulent as to creditors, is nevertheless good between the parties.

The next question is whether the proceedings are not invalid under the act itself, for failure of the petitioning creditor to file the bond required. The act is mandatory that the bond shall be filed before the rule is granted, and the proceedings, therefore, were irregular and should have been quashed, if the objection had been made in time. The first petitioner, however, by leave of the court, filed a bond nunc pro tunc, and as the objection was not made until the record was in this Court, it may fairly be considered as waived by the respondent in the rule, now appellant, for whose benefit the bond was required

The other petitioning creditor who was permitted to intervene has never filed any bond, and the rule as to him was without jurisdiction in the court. He therefore has no standing in the case.

The court below found as a fact that Page advanced the first $500, and gave his note for the second $500, in good faith, and in the honest belief that the money was for the firm. The court therefore found that a judgment for $500 would have been good against creditors, but in regard to the note he held that, as it was in the name of one partner only, Page was put upon notice and chargeable with knowledge that as between the partners, the money raised by the discount of the note was money due to the firm by Case as part of his contribution to the firm capital. As to this sum therefore the court held that it was not a debt of the firm, and being included in the judgment made it wholly void. These deductions however are not sustained by the facts. The representation by Case to Page was that the money was to be raised for the use of the firm by the discount of the note. There was nothing extraordinary in that. One partner may borrow in his own name for the use of his firm, and if he borrows by having his note discounted it is no different. The only effect of the form of the loan is to put on the lender the burden of proof that he believed the money was for the firm, and that it actually reached it. Both these elements were established in this case. Page thought he was lending to the firm, and the money in fact went to and was used by it. It is true that as between the partners, the money was due by Case as contribution to capital, but it is not at all clear that the form of the note on which it was borrowed was sufficient notice to put Page on inquiry into that fact, in the face of Case's assertion that it was money borrowed for the firm, and still less that it would support any inference of fraud in including this sum in the judgment. There must be fraud, and the creditor must be party to it, to avoid the judgment at the suit of other creditors. In Meckley's Appeal, 102 Pa. 536, 543, it was said by our late Brother CLARK: "It is doubtless true, as said by Mr. Justice SHARSWOOD in Clark v. Douglass, 62 Pa. 415, that 'a judgment confessed voluntarily by an insolvent or indebted man for more than is due is prima facie fraudulent within the statute of 13 Eliz. c. 5' but then it is only prima facie fraudulent, and

as the auditor has specifically and expressly found from the evidence that, in fact there was no dishonest or fraudulent purpose to cheat or defraud, delay or hinder the creditors, that prima facie presumption is by the auditor's finding fully rebutted." So here, we do not think the rules of law are to be so applied as to compel us to hold that to be a fraud which the court has on the evidence found to have been done honestly and in good faith. The court below applied the legal presumption too rigidly in view of the actual facts.

Judgment reversed and rule directed to be discharged.