## Spear Estate

Before Klein, P. J., Bolger, Lefever, Saylor, Shoyer and Burke, JJ.

*Perrin C. Hamilton,* for exceptants.

*Eilberg, Meshon & Brener,* contra.

BURKE, J., April 27, 1962.—Various exceptions have been filed to the adjudication of the learned auditing judge dismissing objections to the executors' account and refusing surcharge. These exceptions were filed by one of seven children who take their father's residuary estate in equal shares.

Four of the exceptions relate to the alleged maladministration of decedent's real estate, and to the refusal of the learned auditing judge to surcharge the executors in the sum of $21,000. Exceptant complains that one of the properties was sold to decedent's son for less than fair market value; that extensive repairs should have been made to another property to induce the tenant to remain in possession; and that the executors failed to institute legal proceedings to establish decedent's right to a one-fifth interest in another property which the learned auditing judge found to be worthless.

All of the questions raised by these objections were essentially matters of fact. We have carefully reviewed the testimony, and despite the earnest argument of counsel, the record is replete with credible evidence to support the findings of the learned auditing judge. Where an auditing judge sees and hears the witnesses, it is for him to determine their credibility, and the weight to be given to their testimony, and in the absence of manifest error, his findings will not be disturbed if supported by credible evidence: Roberts Estate, 350 Pa. 467; Gaston Estate, 361 Pa. 105; Harbison Estate, 365 Pa. 468.

The fifth exception was taken to the "allowance" of the claim of decedent's daughter, Sadye Zibelman, for $1,000 loaned to her father and not repaid. Exceptant complains that the claimant's right to recover the debt was barred by the statute of limitations. The evidence shows that the loan was made in March, 1954, some three years prior to decedent's death, and more than six years prior to the filing of the executors' account. The account, however, shows that the executors paid the claim on November 25, 1958, less than four years after the loan was made, and well within the statutory period of six years. Obviously, the claim was never barred by the statute. True, if it had not

been paid, it would have been barred by the statute when the executors' account came up for audit, assuming, however, that the claimant had not given due written notice of the claim to the personal representative, or previously brought suit to recover the debt, or had failed to cite the executors to file an account: Fiduciaries Act of April 18, 1949 P. L. 512, sec. 614 (a) (2) ; Heller's Estate, 5 Dist. R. 205. We have no right to presume such lack of diligence on the part of the claimant. It should be noted that the exceptant, who would now take advantage of the statute of limitations, if it were applicable, caused considerable delay himself in unsuccessfully contesting decedent's will.

Exceptant, of course, had a right to question the validity of the claim and the propriety of payment, and to seek surcharge of the executors if payment were improper. Considering the exception in this light, the record discloses clear and convincing evidence that the claimant had loaned her father $1,000 in March, 1954, and that he owed the debt at the time of his death.

The claimant testified, without objection, that in March 1954, her father borrowed $1,000 from her so that he could give the money to his daughter, Pearl, toward the purchase price of a home, and that the loan remained unpaid when he died. Pearl Moss testified that her father gave her $1,000 in 1954 to enable her to buy a home and at the time stated that he had borrowed the money from the claimant. The testimony of these witnesses was corroborated by their brothers, Benjamin, Bernard and Morris. In a prior will dated November 1, 1956, decedent referred to his indebtedness to the claimant in the amount of $1,500, although in fact he borrowed only $1,000. That the creditor claimed the lesser amount is significant and enhances her credibility. Exceptant offered no evidence whatever to controvert the testimony of these witnesses.

Believing their testimony, the learned auditing judge found as a fact that decedent was indebted to the claimant in the amount of $1,000 at the time of his death, and concluded that the executors were justified in paying the debt.

The law does not require an executor to demand proof in court of a creditor's claim which, in his opinion, is valid. The voluntary payment of such a debt is at the risk of the fiduciary, but the executor's willingness to assume the risk does not make the payment improper. The relationship of one of the executors to the claimant does not of itself impute any impropriety in the payment of a valid claim. It should be borne in mind that claimant's husband was only one of two executors. The claimant herself was not an executor and the charge of self dealing, standing alone, falls of its own weight. Surely if an executor may make a risk distribution of an estate without filing an account, a fortiori he may pay a valid creditor's claim at his own risk prior to audit.

In Woods v. Irwin, 141 Pa. 278 the court said at page 294:

"These cases establish beyond controversion that if . . . the debtor, had been alive in 1886, he could have confessed this judgment, and no creditor could have impeached it as a fraud in law": and at page 293, quoting from Clark v. Douglas, 62 Pa. 408:

"That it was now fortunately well settled that creditors have no right to impeach a judgment on any other ground than collusion."

Nor is there any merit in the sixth exception that the auditing judge failed to remove the executors. An executor may be removed for mismanaging an estate, or for any other reason which is likely to jeopardize the interests of the estate. Exceptant, however, did not avail himself of the procedure prescribed by statute for

removal of the executors, and we are of the opinion that no compelling reason existed which required the court to take such action on its own motion. The estate had been fully administered and nothing remained for the executors to do except distribute the fund in accordance with the adjudication of the auditing judge.

The exceptions are dismissed and the adjudication is confirmed absolutely.